UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# _____
DATE FILED: ___7/20/2015___

---

GILBERT ST. ROSE, JR.,

                              Petitioner,

         – against –

LARKIN,

                              Respondent.

---

**OPINION AND ORDER**

12 CIV. 2336 (ER) (HBP)

Ramos, D.J.:

    Before the Court is the Report and Recommendation ("R&R") of Magistrate Judge Henry B. Pitman in response to a petition by Gilbert St. Rose, Jr. ("Petitioner" or "Rose"), for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (the "Petition"). Doc. 1. In the Petition, Rose asks this Court to vacate his November 2, 2006 conviction, following a jury trial, by the Supreme Court of the State of New York, New York County (Berkman, J.) on one count of grand larceny in the first degree, four counts of grand larceny in the second degree, seven counts of grand larceny in the third degree, seven counts of forgery in the second degree, eight counts of criminal possession of a forged instrument in the second degree, six counts of identity theft in the first degree, and one count of scheme to defraud in the first degree. R&R at 1-2.[1] On June 18, 2015, Judge Pitman issued his R&R recommending that the Court deny Rose's Petition and notifying Rose that he had fourteen days from service of the R&R to file any written objections. *Id.* at 3, 36. For the reasons stated herein, the Court ADOPTS the R&R and directs the entry of judgment as recommended.

    A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate

---

[1] Petitioner's conviction for grand larceny in the first degree was reversed and dismissed by the Appellate Division of the Supreme Court, First Department.

judge." 28 U.S.C. § 636(b)(1)(C).  Parties may raise "specific," "written" objections to the

report and recommendation "[w]ithin fourteen days after being served with a copy."  *Id.*; *see also*

Fed. R. Civ. P. 72(b)(2).  A district court reviews *de novo* those portions of the report and

recommendation to which timely and specific objections are made.  28 U.S.C. § 636(b)(1)(C);

*see also United States v. Male Juvenile (95-CR-1074)*, 121 F.3d 34, 38 (2d Cir. 1997).  The

district court may adopt those parts of the report and recommendation to which no party has

timely objected, provided no clear error is apparent from the face of the record.  *Lewis v. Zon*,

573 F. Supp. 2d 804, 811 (S.D.N.Y. 2008).

     No party has objected to the R&R.  The Court has reviewed Judge Pitman's thorough

R&R and finds no error, clear or otherwise.  Rather, Judge Pitman reached his determination

after a careful review of the parties' submissions.  R&R at 3-36.  The Court therefore ADOPTS

Judge Pitman's recommended judgment for the reasons stated in the R&R.  Rose's Petition is

DENIED.  In addition, as Petitioner has not made a substantial showing of the denial of a

constitutional right, a certificate of appealability will not issue.  *See* 28 U.S.C. § 2253(c); *see

also, e.g., Matthews v. United States*, 682 F.3d 180, 185 (2d Cir. 2012).  Finally, the parties'

failure to file written objections precludes appellate review of this decision.  *PSG Poker, LLC v.

DeRosa-Grund*, No. 06 Civ. 1104 (DLC), 2008 WL 3852051, at *3 (S.D.N.Y. Aug. 15, 2008)

(citing *Male Juvenile,* 121 F.3d at 38).  The Clerk of the Court is respectfully directed to enter

judgment, mail a copy of this order to Petitioner, and close the case.

     It is SO ORDERED.

Dated:  July 20, 2015
     New York, New York

                                        _____
                                     Edgardo Ramos, U.S.D.J.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

GILBERT ST. ROSE, JR.,                  :

                    Petitioner,    :    12 Civ. 2336 (ER)(HBP)

    -against-                      :    REPORT AND
                                        RECOMMENDATION
LARKIN,                            :

                    Respondent.    :

----------------------------------X


            PITMAN, United States Magistrate Judge:


            TO THE HONORABLE EDGARDO RAMOS, United States District

Judge,


I.  Introduction


            Petitioner, Gilbert St. Rose, Jr., seeks, by his pro se

petition, a writ of habeas corpus pursuant to 28 U.S.C. § 2254

vacating a judgment of conviction entered on November 2, 2006,

after a jury trial, by the Supreme Court of the State of New

York, New York County (Berkman, J.), for one count of grand

larceny in the first degree, in violation of New York Penal Law

Section 155.42; four counts of grand larceny in the second

degree, in violation of New York Penal Law Section 155.40(1);

seven counts of grand larceny in the third degree, in violation

of New York Penal Law Section 155.35; seven counts of forgery in

the second degree, in violation of New York Penal Law Section
170.10(1); eight counts of criminal possession of a forged
instrument in the second degree, in violation of New York Penal
Law Section 170.25; six counts of identity theft in the first
degree, in violation of New York Penal Law Section 190.80(3) and
one count of scheme to defraud in the first degree, in violation
of New York Penal Law Section 190.65(1)(b).  Pursuant to that
judgment, petitioner was sentenced as a second felony offender to
an aggregate term of imprisonment of fifteen to thirty years.
The Appellate Division of the Supreme Court, First Department,
reversed and dismissed the conviction for grand larceny in the
first degree, but affirmed petitioner's conviction with respect
to the remainder of the counts.  Petitioner is currently incar-
cerated pursuant to the judgment for a term of imprisonment of
ten to twenty years.[1]

---

[1]While petitioner was initially sentenced to fifteen to
thirty years in prison, the Department of Corrections and
Community Supervision ("DOCCS") and petitioner report that he is
currently serving an aggregate sentence of ten to twenty years
(see Memorandum of Law in Opposition to Petition for a Writ of
Habeas Corpus, dated November 13, 2012 (Docket Item 12) ("Resp.'s
Mem."), at 29; Petition Under 28 U.S.C. § 2254 for Writ of Habeas
Corpus by a Person in State Custody, dated March 25, 2012 (Docket
Item 1) ("Petition") ¶ 4).  The decision of the Appellate
Division modifying petitioner's conviction states that petitioner
was sentenced to an aggregate term of 12 1/2 to 25 years.  People
v. Hinds, 77 A.D.3d 429, 429, 908 N.Y.S.2d 397, 399 (1st Dep't
2010).  The record does not explain these differences.
(continued...)

For the reasons set forth below, I respectfully recommend that the petition be denied.

II.  Facts

A.  Facts Giving Rise to
    Petitioner's Conviction

1.  The Crimes

Petitioner's conviction arises out of two identity theft, fraud and larceny schemes planned with accomplice Curtis Hinds and executed, along with other accomplices, between April 9, 2005 and October 18, 2005 (T.[2] 17-18).  In summary, petitioner and his conspirators stole the identities of several individuals. The conspirators used their victims' social security numbers and forged drivers licenses to open fraudulent bank accounts in the victims' names.  Through a series of misrepresentations and forgeries, the conspirators then added the victims, who were holders of legitimate accounts, as cosigners to the fraudulently

---

[1](...continued)
Petitioner, however, raises no issue concerning the actual duration of his sentence

[2]"T." refers to the transcript of petitioner's trial (Annexed as Attachments 4 through 8 to Declaration of Assistant Attorney General Alyson J. Gill in Opposition to Petition for Writ of Habeas Corpus, dated November 13, 2012 (Docket Item 13) ("Gill Decl.")).

opened accounts.  This was done without any of the victims' knowledge and permitted a victim's actual bank accounts to be linked to the account that was fraudulently opened in that victim's name.  The conspirators were then able to transfer funds from the victims' actual bank accounts to the fraudulently opened accounts, from which the funds were then withdrawn.  A second aspect of the scheme involved the fraudulent opening of a bank account in the name of a Manhattan advertising agency into which the conspirators deposited stolen checks payable to the agency. Through these scams, petitioner and his accomplices were able to steal a total of $1,027,950.20 (T. 17-18).

Petitioner asserts only two claims here:  (1) that the Trial Court violated his Fourth Amendment rights when it denied his motion to suppress the products of a search warrant that petitioner claimed was based on unreliable information and (2) that his Due Process rights were violated when the Trial Court conducted part of the proceedings in his absence.  Because the petition is limited to these two claims, I omit a detailed discussion of the execution of the schemes and the evidence against petitioner.

4

          2.   Search Warrants
               and Arrest

          Detective Robert Muldoon, a member of the Manhattan

District Attorney's Office Detective Squad in the Identity Theft

Unit, led the investigation into the conduct of petitioner and

his conspirators (T. 1635-39).  In November 2005, Curtis Hinds,

one of petitioner's conspirators, lived at 108-33 Seaview Avenue,

Apartment 34-D, Brooklyn, New York while petitioner lived at 569

East 84th Street, Brooklyn, New York (T. 25, 1656, 2617).

Detective Muldoon surveilled Hinds and petitioner's residences

and vehicles, as well as a branch of Washington Mutual Bank

("WaMu") where several fraudulent withdrawals had been made (T.

1659-50, 1866).  Detective Muldoon determined the locations of

Hinds and petitioner's residences, that Hinds drove a black Dodge

Magnum with New Jersey license plates and that petitioner drove a

black BMW sports utility vehicle ("SUV") with Pennsylvania

license plates (T. 1649-50).

          On November 28, 2005, the Honorable Deborah Kaplan of

the Criminal Court of the City of New York issued a warrant to

search both petitioner and Hinds' residences and vehicles for

computers and related equipment, cell phones, bank records, other

persons' identifying information, cash, stocks, bonds, bills,

sales receipts, real estate deeds and automobile titles (Brief

                              5

for Defendant-Appellant, dated November 2009 ("Pet.'s App. Div. Br."), at 119, annexed as Exhibit A to Gill Decl.; Brief for Respondent, dated February 2010 ("Resp.'s App. Div. Br."), at 88-89, annexed as Exhibit B to Gill Decl.).[3]  The warrant was issued based on Detective Muldoon's affidavit in which he stated that he had been advised by the senior investigator at Commerce Bank ("Commerce") that numerous fraudulent Commerce accounts had been opened between February 1, 2004 and October 18, 2005 using fake Virginia or Ohio drivers licenses, fake Verizon phone bills and forged Social Security cards, resulting in a loss of over $500,000 through teller withdrawals, ATM withdrawals and debit card purchases (Affidavit in Support of Search Warrant, dated November 28, 2005 ("Muldoon Aff."), ¶¶ 6(i)-(iii), annexed as Exhibit F to Gill Decl.).  Detective Muldoon also recounted that he had learned from Nabela Abed, one of the participants in the conspiracy who subsequently cooperated with law enforcement, that Abed had opened approximately seven fraudulent accounts, with-

---

[3]Respondent was unable to locate copies of the search warrant, the people's opposition to petitioner's suppression motion or the order denying the motion but has provided a copy of petitioner's affidavit and motion to suppress the results of the search (see Resp.'s Mem., at 6 n.1).  I rely on petitioner's affidavit in support of his suppression motion, the briefs submitted by the petitioner and the prosecution to the Appellate Division and the respondent's opposition papers in this action for the pertinent facts concerning the search warrant in issue.

drawing several thousand dollars after Hinds and petitioner
recruited her and provided her with the necessary forged docu-
ments to open the accounts (Muldoon Aff., ¶¶ 6(iv)-(v)).  Judge
Kaplan also questioned Detective Muldoon and another witness
before issuing the search warrant (Resp.'s App. Div. Br., at 91).

          The search warrant was executed on November 29, 2005
(T. 1662-66).  Detective Muldoon and other officers searched
Hinds' apartment (T. 1666).  They recovered fake drivers li-
censes, utility bills, an envelope from one of the entities that
had written a check to the advertising agency for which the
conspirators had opened a fraudulent account and the agency's
debit card, Commerce banking documents relating to two of the
individual victims of the scheme, receipts from a jewelry store
at which purchases had been made with proceeds withdrawn from the
fraudulent accounts, a fake Ohio driver license with Hinds'
photo, computers, shredders, identity card makers, printers,
scanners and discs, as well as mail, a Social Security card and a
tax refund check all in the name of one of the other individual
victims (T. 818-30, 850, 869-70, 1683, 1728, 1736-40, 1768-76,
2092-2127, 2257-72, 2276-80, 2296).  Forensic analysts were able
to recover deleted files from the computers and discs found in
Hinds' apartment, including New York, Virginia and Ohio driver
license images along with some of the victims' names and images

of some of the fake Verizon phone bills (T. 2093-94, 2105-27, 2134, 2146-48).

Detective Thomas Dempsey also searched the Dodge Magnum, which was registered to Hinds' cousin, recovering a cellphone, baseball cap and hooded sweatshirt (T. 1787-88, 1885, 1935, 2618).  Hinds was arrested at his apartment on November 29, 2005 (T. 1638, 1670).

Detectives Dempsey and Craig Taylor executed the search of petitioner's East 84th Street residence along with other officers (T. 1825, 1962, 1965).  They recovered cell phones and fake identifications, including those for two of the individual victims of the scheme (T. 1798, 1951-59, 1827-51, 1965-95, 2280-82).  Detective Dempsey seized the BMW SUV on November 29, 2005 and searched it on December 1, 2005 (T. 1829-31, 1985).  He recovered a wallet containing petitioner's bank card and a fraudulent bank card in a victim's name, a $9,800 check payable to "Cash" from the fraudulent account of one of the victims, the account numbers of several of the fraudulent accounts and a bank envelope and moneygram in the name of another one of the individual victims (T. 1794-97, 1829-50, 1953, 1985).  The officers were unable to locate petitioner on November 29, 2005; eventually he was arrested on February 8, 2006 (T. 1638, 1802, 1805-08).

At the time of his arrest, petitioner was residing in a
room at 1140 East 92nd Street, Brooklyn, New York (T. 1814).
Officers executed a search warrant for that address on February
10, 2006 and found a fake certificate of incorporation and fake
Verizon phone bill for a company using an address on Pacific
Street in Brooklyn, New York, as well as a lease in petitioner's
name (T. 1814-16, 1940-41).

### 3.  Petitioner's Suppression Motion

On June 15, 2006, petitioner moved to suppress the
evidence recovered from his 569 East 84th Street residence and
his BMW SUV (Pet.'s App. Div. Br., at 126).  Petitioner argued
the warrant was not supported by probable cause because the
affidavit indicated the crimes were committed by a woman, peti-
tioner was not identified by name or physical description, there
were no accusations that criminal activity occurred in peti-
tioner's home or vehicle, there was no evidence the informant was
reliable and Detective Muldoon's only mention of petitioner in
his affidavit was his statement that petitioner resided at the
address to be searched and that he was seen in the vehicles to be
searched (Pet.'s App. Div. Br., at 126-27).  In a written deci-
sion, dated July 12, 2006, the Court denied petitioner's motion,
finding that he had not alleged facts sufficient to establish

9

standing to challenge the search of the BMW SUV or Dodge Magnum, that there was "'sufficient information identifying and connecting'" petitioner to the crimes and that there was reasonable cause to believe that "'evidence related to the identity-theft ring'" would be found in the residences and vehicles to be searched (Resp.'s App. Div. Br., at 92).

B.   Petitioner's Trial

Petitioner was indicted on one count each of grand larceny in the first degree and scheme to defraud in the first degree; four counts grand larceny in the second degree; six counts identity theft in the first degree; seven counts each of grand larceny in the third degree, falsifying business records in the first degree and forgery in the second degree and ten counts criminal possession of a forged instrument in the second degree (Indictment, dated November 29, 2005, annexed as Exhibit I to Gill Decl.).  Petitioner and Hinds were tried together, and jury selection commenced on September 5, 2006 (V.[4] 1).  Petitioner was represented by Michael Fineman, Esq., and Hinds was represented by David Segal, Esq. (V. 1).

---

[4]"V." refers to the transcript of the voir dire proceedings for petitioner's trial (Annexed as Attachment 3 to Gill Decl.).

1.  <u>Prosecution's Case</u>

The prosecution offered the testimony of over forty witnesses, including several of petitioner's conspirators, numerous victims, detectives and other employees in the Manhattan District Attorney's Office, police officers, forensic analysts, a Secret Service agent and counterfeit expert and representatives from Commerce, WaMu and others.  One of the conspirators who testified against petitioner -- Antoneta Johnson -- had previously pleaded guilty to one count of grand larceny in the second degree[5] on July 7, 2006 (T. 1322-23).  She entered into a cooperation agreement[6] on September 10, 2006 and testified at length during petitioner's trial (T. 1323-24).  The prosecution offered an array of evidence concerning the creation and use of forged documents and the theft of funds by petitioner and his accomplices, including surveillance photographs, video footage, voice recordings, counterfeiting equipment, recovered computer images, forged documents and identifications, stolen checks and documents, cell phones, phone records, hotel and airline bills and numerous banking records.

---

[5]Johnson was initially indicted on thirty-seven counts (T. 1323).

[6]Pursuant to the cooperation agreement, Johnson's maximum sentencing exposure was a term of imprisonment of five to fifteen years; her minimum exposure was a term of probation (T. 1325).

2.   Petitioner's Defense

Orison Browne, a friend of Hinds and petitioner,
testified that the three of them worked as nightclub promoters
and vitamin supplement distributors and that the three founded
Virtual Voice Communication ("VVC"), an internet-based telephone
service (T. 2589-96).  Browne testified that although petitioner
drove the BMW SUV, it did not belong to him (T. 2587-88, 2596-97,
2611).  Browne claimed that when he learned of petitioner's
arrest on February 8, 2006, he removed his own personal equipment
and all of petitioner's personal items from the apartment at 1140
East 92nd Street, Brooklyn, New York, prior to the police search
(T. 2599-2602, 2611-15).

Petitioner's co-defendant, Hinds, testified that he
knew petitioner and that they worked as nightclub promoters,
distributed vitamin supplements and founded VVC with Browne (T.
2618-22, 2644, 2682, 2693-95, 2709).  Hinds admitted that the
equipment seized from his apartment was used to make fake docu-
ments and identifications (T. 2626-28).  However, he claimed that
Johnson had introduced him to a man named T.J. and that T.J.
provided Hinds with photographs, including those of female
accomplices, along with stolen information, which he would use to
create drivers licenses, Social Security cards and telephone

12

bills (T. 2629-35, 2646, 2651, 2682-84).  He testified that he
gave T.J. the forged documents, but he did not know their purpose
(T. 2648, 2712-13).  Hinds also testified that at least one piece
of jewelry that was allegedly recovered from his apartment was
not his and was not actually recovered from his apartment, and
that the police planted much of the evidence (T. 2654-55,
2672-73, 2714-16).

Petitioner did not testify.

### 3. Petitioner's Absence During Part of Trial[7]

Petitioner was not present in court for a portion of
his trial.  Petitioner was detained during the trial, and on
September 12, 2006, petitioner was taken to Elmhurst Hospital
after he allegedly fell in the shower (Nov. 2, 2006 Order, at 4;
T. 227).  An x-ray taken at Elmhurst Hospital showed no broken or
dislocated bones, and he was diagnosed with a "back/hip contu-

---

[7]The facts regarding petitioner's absence from a portion of
the trial are taken from the trial transcript, as well as a
written decision issued by the Honorable Carol Berkman, Justice
of the Supreme Court of the State of New York, in which she set
forth her findings of fact and conclusions of law with regard to
petitioner's claims that his absence violated his constitutional
rights (see Order and Opinion of Justice Carol Berkman, dated
November 2, 2006, ("Nov. 2, 2006 Order"), annexed as Exhibit G to
Gill Decl.).

13

sion" (Nov. 2, 2006 Order, at 4-5; T. 228). The proceedings were adjourned for the day (T. 230).

No proceedings were held the following day, and on September 14, 2006, petitioner appeared in a wheelchair (T. 232). Petitioner continued to complain of pain, and his attorney expressed concern that petitioner was groggy due to his pain medication; the Trial Court, however, noted that there were "no objective indicia which would support [petitioner]'s complain[ts]" (Nov. 2, 2006 Order, at 5; T. 232, 238-39). The Trial Court observed petitioner was not sleeping, spoke "animatedly" with counsel and his co-defendant and took "copious notes" with his left hand while appearing unable to move his right arm (Nov. 2, 2006 Order, at 5). When the Trial Court stated that petitioner's immobility appeared inconsistent with his prior complaints, petitioner no longer displayed the symptoms, and the Trial Court expressed its belief that petitioner was malingering (Nov. 2, 2006 Order, at 5; T. 344-45). On September 15, 2006, petitioner continued to complain of pain and drowsiness (T. 564-65).

The following Monday, September 18, 2006, petitioner requested to go to the hospital because he was in "excruciating pain" after he allegedly fell in the shower again (Nov. 2, 2006 Order, at 6; T. 897-98, 901). He was taken to Bellevue Hospital

14

where, after complaining of back pain and leg numbness, a CT scan and neurological examination revealed "degenerative and congenital spinal stenosis"[8] that was "moderately severe" (Nov. 2, 2006 Order, at 6; T. 906-09, 979-82).  The proceedings were again adjourned for the day (T. 906-09).

On September 21, 2006, petitioner, using two canes, slipped down one stair and dropped his canes on the way to the courtroom (Nov. 2, 2006 Order, at 6; T. 1167).  A Corrections Officer reported that petitioner was able to climb the stairs on the balls of his feet, which the Trial Court determined was inconsistent with his report of extreme pain (Nov. 2, 2006 Order, at 6; T. 1168).  After much delay, petitioner appeared in court that morning, but after the lunch recess, he refused to attend the proceedings unless he was provided a gurney because he was "in excruciating pain" (Nov. 2, 2006 Order, at 7; T. 1249).  The Trial Court refused to provide a gurney, finding that (1) it was unnecessary, (2) it posed a security risk, (3) it "had the strong potential for prejudicing the People by arousing undeserved sympathy from the jurors" and (4) it would cause further delays (Nov. 2, 2006 Order, at 7 n.2).  Petitioner was given the choice

---

[8]"Spinal stenosis" is defined as the "narrowing or stricture" of the spine.  Dorland's Illustrated Medical Dictionary, at 1579 (27th ed. 1988).

of either attending court in a wheelchair or not attending the
trial (T. 1250-54).  Petitioner stated he would attend the trial
if he was provided with pain medication (T. 1254).  (The record
does not disclose whether petitioner had previously requested
medication and been denied or that he did not receive medication
that had been prescribed for him (Nov. 2, 2006 Order, at 7 n.2).)
Court officers and petitioner's attorney reminded him that his
only choice was to attend the trial in a wheelchair or that the
trial would proceed in his absence (Nov. 2, 2006 Order, at 7; T.
1254-55, 1260-61).  Petitioner refused to come to court and the
trial proceeded without him (Nov. 2, 2006 Order, at 7; T. 1262).
The jury was instructed to draw no negative inferences from his
absence (T. 1262).

          Three witnesses testified while petitioner was absent.
Ayme Canter, a corporate security legal compliance employee at
Sprint, identified and explained records of the cell phones used
by two of petitioner's accomplices (T. 1263-84).  MaryAnn Reyes,
a security investigator at Verizon Communications, testified that
the telephone numbers on the Verizon phone bills provided to
banks to open accounts for several of the victims did not corre-
spond to Verizon-owned telephone numbers (T. 1263-1302).  Peti-
tioner's attorney moved for a mistrial after Reyes' testimony,
arguing that petitioner's Fifth and Sixth Amendment rights were

16

being violated, and counsel for petitioner's co-defendant joined
in the motion claiming there was a "spill-over" effect on his
client (T. 1302).  The Trial Court denied the motion, finding
that petitioner had "willfully refus[ed] to come to court" (T.
1302-03).  The trial resumed, with the testimony of the cooperat-
ing accomplice.  After her testimony, petitioner's attorney
renewed his motion for a mistrial; the Trial Court denied his
motion (T. 1386-87).

Petitioner's attorney subsequently repeatedly requested
a mistrial, claiming that petitioner did not voluntarily waive
his right to be present because he was in too much pain to appear
and that allowing testimony during his absence violated his Sixth
Amendment right to confront witnesses and his Fifth and Four-
teenth Amendment due process rights (T. 1386-87, 1390-91, 1525-
26).  The Trial Court denied these requests (T. 1386-87, 1390-91,
1525-26).  Petitioner returned to court on September 22, 2006 and
was present for the remainder of the trial (Nov. 2, 2006 Order,
at 8; T. 1390-91).

C.   Direct Appeal

Petitioner, represented by new counsel, appealed his
conviction to the Appellate Division of the Supreme Court for the
First Department.  Among other things, counsel argued that

17

petitioner's Fourth and Sixth Amendment rights and his right to
Due Process were violated because (1) "the hearing court errone-
ously denied the motion to controvert the search warrants where
the affidavits did not demonstrate the reliability of the confi-
dential informant or probable cause" and (2) petitioner's

> due process right to be present as well as his right to
> confront the witnesses against him and his right to
> counsel were violated where the court proceeded with
> the trial in his absence despite evidence that [peti-
> tioner] was in too much pain to proceed, and without
> conducting an inquiry of the physicians

(Pet.'s App. Div. Brief, at 116, 131).

The Appellate Division modified petitioner's convic-
tion, vacating his conviction of first degree grand larceny and
dismissing that count, finding that, as a matter of state law,
the amounts taken from each individual on various occasions could
not be aggregated to reach the $1 million threshold necessary to
sustain that charge.  People v. Hinds, supra, 77 A.D.3d at 430,
908 N.Y.S.2d at 399.  In addition, the Appellate Division deter-
mined that petitioner "did not preserve his claim that the
court's fact-finding procedures were inadequate to establish that
he was malingering," and declined to review that claim in the
interest of justice, and, in the alternative, it rejected that
claim on the merits.  People v. Hinds, supra, 77 A.D.3d at 431,
908 N.Y.S.2d at 400.  In addition, the court concluded that

18

"there exists record support for the court's determination that [petitioner] waived or forfeited his right to be present during a portion of the trial."  People v. Hinds, supra, 77 A.D.3d at 431, 908 N.Y.S.2d at 400.  The Appellate Division considered and rejected petitioner's remaining claims without discussion.  People v. Hinds, supra, 77 A.D.3d at 431, 908 N.Y.S.2d at 400.  The New York Court of Appeals denied petitioner's application for leave to appeal on December 30, 2010.  People v. St. Rose, 15 N.Y.3d 955, 942 N.E.2d 326, 917 N.Y.S.2d 115 (2010).

   D.  Petitioner's Claims

      The petitioner asserts two claims in this Court:  (1) "[i]llegal search [and] seizure" and (2) violation of his "[r]ight to be present at trial" (Petition ¶ 13).  Respondent concedes the claims are timely and exhausted.

III.  Analysis

   A.  Petitioner's Fourth Amendment
       Claim Is Barred by Stone v.
       Powell and its Progeny

      Petitioner claims that the search of his residence at 569 East 84th Street, Brooklyn, New York and his BMW SUV violated

19

his Fourth Amendment right to be free from unreasonable searches
and seizures (Petition ¶ 13).

Petitioner's claim is squarely barred by <u>Stone v.
Powell</u>, 428 U.S. 465 (1976) and its progeny.  The limited scope
of review available in habeas proceedings for alleged Fourth
Amendment violations was explained by the Honorable Richard M.
Berman, United States District Judge, in <u>Baker v. Bennett</u>, 235 F.
Supp. 2d 298, 306-07 (S.D.N.Y. 2002):

> In <u>Stone v. Powell</u>, 428 U.S. 465, 96 S. Ct. 3037,
> 49 L.Ed.2d 1067 (1976), the Supreme Court established
> that "where the state has provided an opportunity for
> full and fair litigation of a Fourth Amendment claim, a
> state prisoner may not be granted federal habeas corpus
> relief on the ground that evidence obtained in an
> unconstitutional search or seizure was introduced at
> his trial." <u>Id.</u> at 494, 96 S. Ct. 3037; <u>Capellan v.
> Riley</u>, 975 F.2d 67, 70 (2d Cir. 1992).  A federal court
> "ha[s] no authority to review the state record and
> grant the writ simply because [it] disagree[s] with the
> result reached by the state courts" on a Fourth Amend-
> ment issue. <u>Gates v. Henderson</u>, 568 F.2d 830, 840 (2d
> Cir. 1977); <u>see also</u> <u>Torres v. Irvin</u>, 33 F. Supp. 2d
> 257, 264 (S.D.N.Y. 1998) ("A petition for a writ of
> habeas corpus must be dismissed where it seeks simply
> to relitigate a Fourth Amendment claim.").  The only
> way a federal court can review such a claim is where
> "the state has provided no corrective procedures at
> all," or the state has provided a corrective mechanism,
> but the defendant is precluded from using that mecha-
> nism "because of an unconscionable breakdown in the
> underlying process." <u>Capellan</u>, 975 F.2d at 70 (citing
> <u>Gates</u>, 568 F.2d at 839); <u>Torres</u>, 33 F. Supp. 2d at 264.

<u>See also</u> <u>Hall v. Griener</u>, 00 Civ. 5517 (WHP)(HBP), 2004 WL 350759
at *2-*3 (S.D.N.Y. Feb. 24, 2004) (Pitman, M.J.); <u>Valtin v.

Hollins, 248 F. Supp. 2d 311, 317 (S.D.N.Y. 2003) (Marrero,
D.J.); Torres v. Irvin, 33 F. Supp. 2d 257, 264 (S.D.N.Y. 1998)
(Cote, D.J.).

The Court of Appeals for the Second Circuit has held
that New York's procedure for reviewing Fourth Amendment claims
is adequate.  See Capellan v. Riley, 975 F.2d 67, 70 n.1 (2d Cir.
1992).  See also Jones v. Brandt, 09 Civ. 1035 (SAS), 2013 WL
5423965 at *10 n.142 (S.D.N.Y. Sept. 26, 2013) (Scheindlin,
D.J.); Crispino v. Allard, 378 F. Supp. 2d 393, 413 (S.D.N.Y.
2005) (Sweet, D.J.); Crawford v. Artuz, 165 F. Supp. 2d 627, 637
(S.D.N.Y. 2001) (Marrero, D.J.).  Petitioner's pre-trial motion
to controvert the search warrant was considered and denied by the
Trial Court on July 12, 2006, and petitioner's Fourth Amendment
claim was again considered and rejected by the Appellate Divi-
sion.  Thus, petitioner cannot prevail under the first prong of
Capellan, because he was able to litigate his Fourth Amendment
claim.

Because New York's procedure for litigating Fourth
Amendment claims is adequate, petitioner's Fourth Amendment claim
is cognizable here only if petitioner can show that there was "an
unconscionable breakdown in the underlying process."  Capellan v.
Riley, supra, 975 F.2d at 70, citing Gates v. Henderson, 568 F.2d
830, 840 (2d Cir. 1977) (en banc).  "An unconscionable breakdown

occurs when the state court fails to conduct a reasoned inquiry
into the petitioner's claim." Valtin v. Hollins, supra, 248 F.
Supp. 2d at 317, citing Papile v. Hernandez, 697 F. Supp. 626,
633 (E.D.N.Y. 1988).  See also Vega v. Artuz, 97 Civ. 3775
(LTS)(JCF), 2002 WL 252764 at *12 (S.D.N.Y. Feb. 20, 2002)
(Swain, D.J.), quoting Capellan v. Riley, supra, 975 F.2d at 70
(stating "some sort of 'disruption or obstruction of a state
proceeding' is typical of [an unconscionable breakdown]").

          Although petitioner disagrees with the result reached
by New York's courts, he has failed to show that the state failed
to conduct a reasoned inquiry.  After considering petitioner's
claim, the Trial Court issued a written decision denying his
motion to controvert the search warrant (Resp.'s App. Div. Br.,
at 92).  Petitioner litigated his illegal search warrant claim
again on direct appeal, and it was considered and rejected.
People v. Hinds, supra, 77 A.D.3d at 431, 908 N.Y.S.2d at 400.
At both the trial and appellate levels, petitioner was assisted
by counsel.  Given this record, petitioner was afforded a "rea-
soned inquiry" concerning his Fourth Amendment claim.  See Brown
v. Donnelly, 371 F. Supp. 2d 332, 339 (W.D.N.Y. 2005) ("[Peti-
tioner's] various applications at the trial court and appellate
levels challenging the search warrant clearly show that he was
given an opportunity for a 'full and fair' litigation of his

Fourth Amendment claim."); Quick v. Allard, 04-CV-2069 (FB), 2004 WL 2326376 at *2 (E.D.N.Y. Oct. 12, 2004) (same); Neish v. Reynolds, 9:97-CV-1901 (TJM)(GLS), 2000 WL 33743383 at *5 (N.D.N.Y. Nov. 30, 2000) (same).

Petitioner's disagreement with the result reached by New York's courts does not support the conclusion that there was an "unconscionable breakdown" and does not permit petitioner's Fourth Amendment claim to be relitigated. See Capellan v. Riley, supra, 975 F.2d at 71 ("Even if [petitioner] were correct in his allegation that the Appellate Division erroneously decided this issue, a petitioner cannot gain federal review of a fourth amendment claim simply because the federal court may have reached a different result."); accord Gates v. Henderson, supra, 568 F.2d at 840.

Accordingly, because petitioner was afforded the opportunity to litigate his Fourth Amendment claim in his pre-trial motion and on appeal and has failed to demonstrate that there was an "unconscionable breakdown" in the system, his Fourth Amendment claim cannot be relitigated here. See Baker v. Bennett, supra, 235 F. Supp. 2d at 307.

23

B.  Petitioner's Sixth
    Amendment Claim Is
    <u>Procedurally Barred</u>

I also conclude that petitioner's Sixth Amendment is procedurally barred by the Appellate Division's finding that it was unpreserved.

A threshold issue is the precise nature of petitioner's Sixth Amendment claim.  Respondent's opposition assumes that petitioner is arguing that the Trial Court erred in concluding that petitioner was malingering and was actually able to attend trial.  For example, respondent states in its Memorandum of Law in Opposition to Petition for a Writ of Habeas Corpus that "Petitioner claims, as he did on direct appeal, that the trial court violated his right to be present when it concluded that petitioner was malingering and continued the trial in his absence.  The state court rejected that claim, which is entitled to a presumption of correctness" (Resp.'s Mem at 35).  As explained below, I believe that respondent has not characterized petitioner's claim accurately.

Because petitioner's statement of his Sixth Amendment claim in the petition is limited to "[r]ight to be present at trial" (Petition ¶ 13), I rely on petitioner's brief to the Appellate Division for a more fulsome statement of his conten-

24

tion.[9]  Petitioner's brief to the Appellate Division makes clear
that petitioner's Sixth Amendment claim is his disagreement with
the Trial Court's failure to conduct an evidentiary hearing
concerning his contention that he was in too much pain to attend
the trial.  For example, the opening paragraph of the pertinent
section of petitioner's brief to the Appellate Division opened:

> A court may proceed with a trial in the absence of
> a defendant as long as his absence is voluntary.  A
> defendant's absence is regarded as voluntary if he is
> aware of the process taking place[,] of his right to be
> present, and if he has no sound reason for staying
> away.  In this case, counsel's lawyer reported to the
> court that [petitioner] was suffering from too much
> pain to proceed.  The court[-]ordered medical tests . .
> . indicated that [petitioner] was suffering from a
> condition that would cause pain.  The court, interpret-
> ing the test results itself, concluded that [peti-
> tioner] was malingering and proceeded with [the] trial.
> The prosecutor examined several witnesses, including
> the only one who could directly implicate [petitioner],
> in [petitioner]'s absence.  Before proceeding with
> [the] trial in [petitioner]'s absence, the court ought
> to have conducted an inquiry of the physicians about
> the meaning of the medical test results to determine
> whether [petitioner's] absence was voluntary or whether
> he had reason for his absence.  By proceeding with the
> trial without adequate inquiry, the court denied [peti-
> tioner] his right to be present without adequate in-
> quiry, the court denied [petitioner] his right to be

---

[9]Petitioner is, of course, limited here to the
constitutional claims he asserted before the Appellate Division.
Any other claim would have to be dismissed as unexhausted.  28
U.S.C. § 2254(b); Cone v. Bell, 556 U.S. 449, 465 (2009); Baldwin
v. Reese, 541 U.S. 27, 29 (2004); O'Sullivan v. Boerckel, 526
U.S. 838, 842 (1999); Picard v. Connor, 404 U.S. 270, 275 (1971).

<u>present for a critical portion of his trial</u>.  U.S.
Const., Amends. VI, XIV; N.Y. Const., Art. I, §6.

(Pet.'s App. Div. Br. at 131-32 (emphasis added)).

A few pages later, petitioner argued

While the court reasoned that if a court is enti-
tled to rely, in part, on its own observations in
assessing a defendant's mental competence, a court is
entitled to rely on its own observations in assessing a
defendant's physical ability to attend trial, this
reasoning is flawed.  First, a court could not rely
entirely on its own observations in finding competence
in the face of contradictory psychiatric evidence of
any integrity.  More important, while a court may be
qualified to question a defendant to determine if he is
rational and, therefore, competent, a court is not
qualified to conduct a physical examination of a defen-
dant to diagnose his physical affliction.  Nor does a
court have the expertise to know that the way one walks
or sits is symptomatic of an illness.

In order for the court to have determined whether
or not [petitioner] was malingering, and whether or not
his absence from trial was voluntary, <u>the court would
have had to have conducted an inquiry of the physicians
as to the amount of pain caused by spinal stenosis and
the effect of the pain on [petitioner]'s participation
at trial.  Without such an inquiry, [petitioner]'s
absence cannot be deemed voluntary</u>.  <u>Taylor</u>, 414 U.S.
at 19-20.

(Pet.'s App. Div. Br. at 137-38 (emphasis added)).

Construing petitioner's Sixth Amendment claim to assert

that the Trial Court's error was its failure to conduct a hearing

is also consistent with the Appellate Division's understanding of

petitioner's claim.  In rejecting the claim, the Appellate

Division stated:

26

We find that St. Rose did not preserve <u>his claim</u>
<u>that the court's fact-finding procedures were inade-</u>
<u>quate to establish that he was malingering</u>, and we
decline to review it in the interests of justice.  As
an alternative holding, we reject it on the merits.

<u>People v. Hinds</u>, <u>supra</u>, 77 A.D.3d at 431, 908 N.Y.S.2d at 400.

There is no question that petitioner is asserting that
the Trial Court reached the wrong conclusion concerning his
physical ability to attend trial, but petitioner's claim is that
the Trial Court reached the wrong conclusion because it failed to
conduct a hearing, not because it failed to weigh the evidence
properly or because it made some other error.

Construed as a claim that the Trial Court violated
petitioner's Sixth Amendment rights by failing to conduct a
hearing concerning petitioner's ability to attend trial, peti-
tioner's Sixth Amendment claim is procedurally barred.

It is well settled that a habeas petitioner's constitu-
tional claim can be procedurally barred if it has not been
asserted in state court proceedings in accordance with state
procedural requirements and the state courts rely on that viola-
tion of state procedural requirements to reject the claim.  As
the Court of Appeals for the Second Circuit has explained:

The independent and adequate state ground doctrine
first arose in the context of direct appeals to the
Supreme Court from final judgments of the state courts.
Under that doctrine the Supreme Court "will not review
a question of federal law decided by a state court if

27

the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." Coleman v. Thompson, 501 U.S. 722, 729, 111 S. Ct. 2546, 115 L.Ed.2d 640 (1991).  Moreover, "[t]his rule applies whether the state law ground is substantive or procedural."  Id.

\*     \*     \*

The doctrine also applies in the context of federal courts reviewing applications for a writ of habeas corpus . . . .  [I]nvoking principles of comity and federalism, . . . federal habeas courts faced with an independent and adequate state ground of decision defer in the same manner as does the Supreme Court on direct review.

Garcia v. Lewis, 188 F.3d 71, 76 (2d Cir. 1999); see also Beard v. Kindler, 558 U.S. 53, 55 (2009) ("A federal habeas court will not review a claim rejected by a state court if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment." (inner quotations and citation omitted and brackets in original)); Cone v. Bell, supra, 556 U.S. at 465 (same); Bierenbaum v. Graham, 607 F.3d 36, 47-48 (2d Cir. 2010) (same); Cotto v. Herbert, 331 F.3d 217, 238-39 (2d Cir. 2003); Rhagi v. Artuz, 309 F.3d 103, 106 (2d Cir. 2002) ("[I]t is settled law that an independent and adequate state law ground for a state court conviction cannot be disturbed on habeas."), citing Coleman v. Thompson, 501 U.S. 722, 729-31 (1991); Brown v. State of New York, 04-CV-1087 (NG)(VVP), 2006 WL 3085704 at *2 (E.D.N.Y. Oct.

28

30, 2006) ("When a habeas corpus petitioner defaults a federal
claim in state court . . . by failing to preserve the claim for
state appellate review . . . , the independent and adequate state
ground doctrine bars federal habeas corpus review."); Rivera v.
Moscicki, 03 Civ. 5810 (SAS), 2005 WL 2347840 at *2 (S.D.N.Y.
Sept. 22, 2005) (Scheindlin, D.J.) ("A federal court generally
may not review a state court decision that expressly relies on a
procedural default as an independent and adequate state ground
for dismissal.").

Dismissal of a claim on the ground that consideration
of the merits is precluded by an adequate and independent state
procedural ground is appropriate where the last reasoned state
court decision expressly relies on a state procedural bar:

> In Harris [v. Reed, 489 U.S. 255 (1989)], the Court
> held that "a procedural default does not bar consider-
> ation of a federal claim on either direct or habeas
> review unless the last state court rendering a judgment
> in the case clearly and expressly states that its
> judgment rests on a state procedural bar."  Harris, 489
> U.S. at 263, 109 S. Ct. 1038 (internal quotation marks
> omitted).  We apply the Long/Harris presumption to the
> last "reasoned state judgment" . . . .  See Ylst v.
> Nunnemaker, 501 U.S. 797, 803, 111 S. Ct. 2590, 115
> L.Ed.2d 706 (1991).

Jones v. Stinson, 229 F.3d 112, 118 (2d Cir. 2000); see also
Galarza v. Keane, 252 F.3d 630, 637 (2d Cir. 2001) ("We have
repeatedly stated that in order for federal habeas review to be
procedurally barred, a state court must actually have relied on a

procedural bar as an independent basis for its disposition of the case, and the state court's reliance on state law must be unambiguous and clear from the face of the opinion.").

"Even where the state court has ruled on the merits of a federal claim 'in the alternative,' federal habeas review is foreclosed where the state court has also expressly relied on the petitioner's procedural default." Murden v. Artuz, 497 F.3d 179, 191 (2d Cir. 2007), quoting Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005); accord Harris v. Reed, 489 U.S. 255, 264 n.10 (1989); Galmadez v. Keane, 394 F.3d 68, 77 (2d Cir. 2005); Glenn v. Bartlett, 98 F.3d 721, 724 (2d Cir. 1996)

However, even where the last reasoned decision of the state court expressly rejects a federal constitutional claim on a state procedural ground, federal habeas corpus review will not be precluded if (1) the state procedural ground is not independent and adequate, see Jimenez v. Walker, 458 F.3d 130, 138 (2d Cir. 2006); Monroe v. Kuhlman, 433 F.3d 236, 241-42 (2d Cir. 2006); Cotto v. Herbert, supra, 331 F.3d at 238-39, (2) there is cause for and prejudice from petitioner's failure to assert his claims in accordance with state procedural law or (3) a failure to consider the claim would result in a fundamental miscarriage of justice. Schlup v. Delo, 513 U.S. 298, 324-27 (1995); Coleman v. Thompson, supra, 501 U.S. at 748-50; Harris v. Reed, supra, 489

U.S. at 262; Green v. Travis, supra, 414 F.3d at 294.  A state law bar is not "adequate" when it is not "firmly established and regularly followed . . . or . . . despite being firmly estab-lished, [there] was an exorbitant application of a generally sound rule."  Wright v. Duncan, 500 F. App'x 36, 37 (2d Cir. 2012) (internal quotations and citations omitted).  A habeas petitioner can establish "cause" by showing that "some objective factor, external to Petitioner's defense, interfered with his ability to comply with the state's procedural rule."  Gutierrez v. Smith, 702 F.3d 103, 111 (2d Cir. 2012).  A habeas petitioner can establish prejudice by showing that "[t]he error must have resulted in 'substantial disadvantage, infecting [the] entire trial with error of constitutional dimensions.'"  Gutierrez v. Smith, supra, 702 F.3d at 112 (second alteration in original), quoting Murray v. Carrier, 477 U.S. 478, 494 (1986).  Finally, to establish a fundamental miscarriage of justice, a habeas peti-tioner must show that a constitutional violation probably re-sulted in his conviction despite his actual innocence.  United States v. Olano, 507 U.S. 725, 736 (1993) ("In our colla-teral-review jurisprudence, the term 'miscarriage of justice' means that the defendant is actually innocent.");  Sweet v. Bennett, 353 F.3d 135, 141 (2d Cir. 2003) ([A] "habeas petitioner may avoid [a procedural] default . . . by showing . . . that

failure to consider the claim will result in miscarriage of
justice, i.e., the petitioner is actually innocent."); accord
Johnson v. Bellnier, 508 F. App'x 23, 25 (2d Cir. 2013); Sanchez
v. Lee, 508 F. App'x 46, 48 (2d Cir. 2013).

The Appellate Division clearly and unequivocally
rejected petitioner's Sixth Amendment claim on state procedural
grounds, finding that petitioner "did not preserve his claim that
the court's fact-finding procedures were inadequate to establish
that he was malingering . . . ." People v. Hinds, supra, 77
A.D.3d at 431, 908 N.Y.S.2d at 400.  The fact that the Appellate
Division went on to state how it would have resolved the merits
of the claim if it were to address the merits does not change the
nature of its determination.

Petitioner raises no argument in response to the
procedural bar -- he does not claim that the state procedural
rule is not independent and adequate, he does not claim that
there was cause for and prejudice from his failure to comply with
New York's preservation requirement nor does he claim that a
failure to address the merits of his Sixth Amendment claim will
result in a fundamental miscarriage of justice.

Moreover, it does not appear that petitioner could
mount a colorable argument that the state procedural rule on
which the Appellate Division relied was not adequate and inde-

pendent.  Petitioner's trial counsel never requested a hearing on the issue of petitioner's ability attend the trial (Nov. 2, 2006 Order, at 11), apparently causing the Appellate Division to conclude that New York's requirement of a contemporaneous objection to preserve an appellate issue had not been met (see Resp.'s App. Div. Br. at 118-19).  New York's contemporaneous objection rule has routinely been upheld as an adequate and independent state procedural bar sufficient to preclude federal review.  See Garcia v. Lewis, supra, 188 F.3d at 79 ("[W]e have observed and deferred to New York's consistent application of its contemporaneous objection rules." (citation omitted)); see also Downs v. Lape, 657 F.3d 97, 104 (2d Cir. 2011); Whitley v. Ercole, 642 F.3d 278, 286 (2d Cir. 2011); Richardson v. Greene, 497 F.3d 212, 219 (2d Cir. 2007); Vargas v. Keane, 86 F.3d 1273, 1280 (2d Cir. 1996) (procedural default resulting from trial counsel's failure to object to prosecutor's remarks is an independent and adequate state law ground for rejection of a habeas claim); Watkins v. Perez, 05 Civ. 477 (GEL), 2007 WL 1344163 at *16 (S.D.N.Y. May 7, 2007) (Lynch, then D.J., now Cir. J.) (same).

Nor was the Appellate Division's application of New York's contemporaneous objection rule exorbitant.  "To determine whether [a] case involves an exorbitant misapplication of a state rule, [a court] look[s] to see if the state's application serves

a legitimate state interest."  Downs v. Lape, supra, 657 F.3d at

102.  Had petitioner's counsel requested a hearing during the

trial, the Trial Court could have either held a hearing or

further developed the record to determine whether there was any

factual dispute that could have been resolved by a hearing.[10]  By

raising the issue for the first time on appeal, petitioner made

it impossible for the Trial Court to take corrective action.

Petitioner did not seek a hearing on his ability to

attend his trial while the trial was in progress, and the Appel-

late Division expressly relied on this procedural default in

---

[10]Although counsel for petitioner's co-defendant suggested
that a hearing be held to address petitioner's ability to attend
the trial (Nov. 2, 2006 Order, at 11), he had no standing to do
so and his raising the issue was insufficient as a matter of New
York law to preserve the issue as to petitioner.  Ramos v. New
York, 06 Civ. 3886 (GBD)(JCF), 2007 WL 1334969 at *7 (S.D.N.Y.
May 8, 2007) (Francis, M.J.) (Report and Recommendation) ("New
York courts have consistently found that a defendant cannot rely
upon a co-defendant's objection, but must himself register a
protest."), adopted at 2008 WL 2743648 (S.D.N.Y. July 11, 2008)
(Daniels, D.J.); accord People v. Buckley, 75 N.Y.2d 843, 846,
552 N.E.2d 160, 162, 552 N.Y.S.2d 912, 914 (1990).  "The New York
contemporaneous objection rule requires objection to be made 'by
the party claiming error.'"  Otero v. Eisenschmidt, 01 Civ. 2562
(HB)(AJP), 2004 WL 2504382 at *23 (S.D.N.Y. Nov. 8, 2004) (Peck,
M.J.) (Report and Recommendation), quoting New York Criminal
Procedure Law § 470.05(2); see also Cherry v. Walsh, No. 09-CV-
1452 (JG), 2009 WL 2611225 at *9 n.5 (E.D.N.Y. Aug. 25, 2009);
People v. Alvarez, 51 A.D.3d 167, 180, 854 N.Y.S.2d 70, 80 (1st
Dep't 2008); People v. Greening, 254 A.D.2d 739, 739, 679
N.Y.S.2d 767, 769 (4th Dep't 1998).

rejecting the claim on appeal.  Thus, the claim should be re-
jected as procedurally barred.

IV.  <u>Summary</u>

       Accordingly, for all the foregoing reasons, I respect-
fully recommend that the petition be denied in all respects.

       In addition, because petitioner has not made a substan-
tial showing of the denial of a constitutional right, I also
recommend that a certificate of appealability not be issued.  28
U.S.C. § 2253.  To warrant the issuance of a certificate of
appealability, "petitioner must show that reasonable jurists
could debate whether . . . the petition should have been resolved
in a different manner or that the issues presented were adequate
to deserve encouragement to proceed further." <u>Middleton v.
Attorneys Gen.</u>, 396 F.3d 207, 209 (2d Cir. 2005) (<u>per</u> <u>curiam</u>)
(internal quotation marks and citation omitted, alteration in
original); <u>see</u> <u>also</u> <u>Love v. McCray</u>, 413 F.3d 192, 195 (2d Cir.
2005) (<u>per</u> <u>curiam</u>).  For the reasons set forth above, I conclude
that there would be no difference of opinion among reasonable
jurists that petitioner's federal rights were not violated.

       I further recommend that certification pursuant to 28
U.S.C. § 1915(a)(3) not be issued because any appeal from this
Report and Recommendation, or any Order entered thereon, would

not be taken in good faith.  See <u>Coppedge v. United States</u>, 369
U.S. 438, 445 (1962).

V.  <u>Objections</u>

      Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72(b) of
the Federal Rules of Civil Procedure, the parties shall have
fourteen (14) days from receipt of this Report to file written
objections.  <u>See also</u> Fed. R. Civ. P. 6(a).  Such objections (and
responses thereto) shall be filed with the Clerk of the Court,
with courtesy copies delivered to the Chambers of the Honorable
Edgardo Ramos, United States District Judge, 40 Foley Square,
Room 410, New York, New York 10007, and to the Chambers of the
undersigned, 500 Pearl Street, Room 750, New York, New York
10007.  Any requests for an extension of time for filing objec-
tions must be directed to Judge Ramos.  FAILURE TO OBJECT WITHIN
FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND **WILL**
PRECLUDE APPELLATE REVIEW.  <u>Thomas v. Arn</u>, 474 U.S. 140, 155
(1985); <u>United States v. Male Juvenile</u>, 121 F.3d 34, 38 (2d Cir.
1997); <u>IUE AFL-CIO Pension Fund v. Herrmann</u>, 9 F.3d 1049, 1054
(2d Cir. 1993); <u>Frank v. Johnson</u>, 968 F.2d 298, 300 (2d Cir.

1992); <u>Wesolek v. Canadair Ltd.</u>, 838 F.2d 55, 57-59 (2d Cir.

1988); <u>McCarthy v. Manson</u>, 714 F.2d 234, 237-238 (2d Cir. 1983).

Dated:   New York, New York
         June 18, 2015

                                   Respectfully submitted,


                                   HENRY PITMAN
                                   United States Magistrate Judge

Copies mailed to:

Mr. Gilbert St. Rose
06-A-6210
Eastern Correctional Facility
P.O. Box 338
Napanoch, New York   12458

Alyson J. Gill, Esq.
Assistant Attorney General
12th Floor
120 Broadway
New York, New York   10271